IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Ricky R. Renz, et al., | Case No. 3:10 CV 202 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Willard Police Department, et al., | |
| Defendants. | |

### INTRODUCTION

Plaintiffs Ricky and Glenda Renz brought this action against the City of Willard, the City of Willard Police Department, and Willard Police Officer Jeremy Draper (Doc. No. 1). Defendants filed a Motion for Summary Judgment (Doc. No. 16); Plaintiffs filed an Opposition (Doc. No. 19); and Defendants filed a Reply (Doc. No. 20).

For the reasons stated below, Defendants' Motion is granted and the case is dismissed.

### BACKGROUND

The allegations in the Complaint center around an incident occurring at the end of a boys' high school basketball game between Fostoria and Willard high schools. Fostoria won the game by one point. As the players were in line shaking each others' hands after a hard fought battle, Plaintiff Ricky Renz, the coach of Fostoria, got into a verbal altercation with the former athletic director for Willard City Schools, Michael Lillo. Officer Draper, who was standing nearby when this altercation took place, reacted to a sudden aggressive movement made by Renz toward Lillo. His reaction consisted of grabbing Renz by the shoulders, turning him around, and directing him away from Lillo

and toward the visiting team's locker room. This entire incident was captured by a video recording, which has been filed as part of the record (Doc. No. 18). Both parties agree that it is the "best evidence" of the events central to this case.

In Count One of the Complaint, Plaintiffs allege Draper acted negligently in his handling of the altercation between Renz and Lillo. Count Two alleges *respondeat superior* liability, impugning the actions of Draper against the City of Willard and the Willard Police Department. Count Three alleges negligent retention on the part of the City and the Police Department. There is no "Count Four" in the Complaint, instead skipping straight along to Count Five, which alleges Draper violated Renz' civil rights in contravention of 42 U.S.C. § 1983. Count Six is not truly a cause of action, but instead provides what limited details Plaintiffs knew about four John Doe Defendants, all of whom have still not been identified.[1] Count Seven alleges Draper acted with "malicious, bad faith, wanton or reckless" conduct, presumably to invoke one of the exceptions to immunity under Ohio Revised Code Section 2744.03(A)(6). Finally, Count Eight alleges Glenda Renz, wife of Ricky Renz, suffered loss of consortium as a result of Draper's actions.

These Counts fall into two categories: federal constitutional civil rights claims, and state law tort claims subject to the political subdivision immunity provisions under the Ohio Revised Code.

---

[1] One John Doe presumably turned out to be Draper, whom Plaintiffs added as a defendant after filing the Complaint (Doc. No. 15). However, Plaintiffs did not then correspondingly remove any of the John Does.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## ANALYSIS

### City of Willard Police Department

As an initial matter, Defendant Willard Police Department is dismissed from the case. A municipal police department is not *sui juris* and suits against such entities are construed as brought against the municipality itself, because a judgment against a municipal police department imposes liability on the municipality. *See, e.g.*, *Harris v. Sutton*, 183 Ohio App. 3d 616 (2009). The cause of action against the Willard Police Department is absorbed into Plaintiffs' claims against Defendant City of Willard. *Id.*

### Officer Draper's Conduct was Objectively Reasonable

Plaintiffs allege Defendants violated Ricky Renz' constitutional rights by initiating an unreasonable seizure and applying excessive force at the conclusion of the basketball game on January 30, 2009 (Doc. No. 1, ¶¶ 31-34). However, the undisputed evidence in this case is clear:

3

Renz' constitutional rights were not violated, and no reasonable law enforcement officer would have recognized the force applied as constituting a clear violation of Renz' civil rights.

Claims that a law enforcement official has used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a person are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A court must therefore "ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). In determining the reasonableness of an officer's use of force, the court must view the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996).

The video demonstrates that the force applied by Draper was reasonable, and certainly not excessive. Affidavits presented by Plaintiffs (Doc. Nos. 19-1 through 4) do not present a disputed fact. Characterizations and conclusions that Plaintiff was "swung around toward the ground" and "placed in a hold," or "pulled backwards" and "spun around" (Doc. No. 19-1, ¶¶ 10-12; Doc. No. 19-2, ¶ 9) cannot contradict the video which clearly shows otherwise. *Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007) (holding that a video that "blatantly contradicts" the non-movant's version of the facts supports a district court's grant of summary judgment) (citing *Scott v. Harris*, 550 U.S. 372, 379-80 (2007)).

Draper did not tackle or force Renz to the ground. He did not place Renz in hand-cuffs, or take him down, or place Renz in any sort of crippling hold. Rather, he merely grabbed Renz around the shoulders, turned him away from Lillo, and escorted Renz to the visiting team locker room, directing him with a hand on his back (*See* Doc. No. 18, video of January 30, 2009 incident, beginning

at approximately 43 minutes, 40 seconds). Draper's conduct can only be classified as objectively reasonable in response to Renz' hostility toward Lillo.

**Immunity of the City of Willard**

Ohio Revised Code Chapter 2744 establishes a three-step analysis for determining whether a political subdivision is immune from liability. *Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (1998). In the first step, Revised Code Section 2744.02(A) sets forth the general rule of immunity, which is that political subdivisions are not liable in damages for the personal injuries or death of a person. However, in the second step, the immunity is subject to five exceptions listed in Revised Code Section 2744.02(B). Then, under the third step, immunity can be reinstated if the political subdivision successfully argues that one of the defenses contained in Revised Code Section 2744.03 applies to the circumstances of the case.

Under the first step of the political subdivision immunity analysis, Revised Code Section 2744.02(A)(1) provides a political subdivision or its employees with blanket immunity from tort liability arising out of an act or omission by the political subdivision or its employee if the act or omission is in the course of a "governmental" or "proprietary" function. The definition of a "political subdivision" includes municipal subdivisions, such as the City of Willard. Rev. Code § 2744.01(F). Police protection is a governmental function, as is the power to preserve peace and prevent disturbances or disorderly conduct. Rev. Code § 2744.01(C)(2). Therefore, because Draper was acting in his official capacity as a police officer attempting to preserve peace and prevent disorderly conduct, the City of Willard enjoys immunity under Revised Code Section 2744.02(A)(1).

Additionally, none of the exceptions found in Revised Code Section 2744.02(B) apply in this case. Thus, the immunity survives the second step of analysis, and this Court need not address the

5

third step. Defendant Willard enjoys immunity protection to the extent the Complaint relies on state law tort principles against the City or the Police Department.

### Respondeat Superior

Plaintiffs rely on *respondeat superior* to impugn the actions of Defendant Draper to the City. However, again, the City enjoys immunity. Furthermore, Plaintiffs cannot use *respondeat superior* to hold the City liable for civil rights violations. In order for a local government to be held liable under 42 U.S.C. § 1983, "a plaintiff must show that his injuries were the result of some 'policy or custom' attributable to the governmental entity." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (citing *Monell v. New York City Dep't of Soc. Serv's.*, 436 U.S. 658, 690 (1978)). The local government's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under §1983." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694). As discussed above and evidenced by the video, there was no constitutional violation. Draper did not violate Renz' civil rights by turning him around and directing him toward the locker room. Even if Draper's actions were supported by official City policy or custom, the City would not be liable under *Monell* because there was no underlying constitutional violation. *See Hunt v. Sycamore Cmty. School Dist. Bd. of Educ.*, 542 F.3d 529 (6th Cir. 2008) (affirming district court's dismissal of *Monell* claim against local government entity because there was no underlying constitutional violation).

### Immunity of Officer Draper

Draper is also immune from Plaintiffs' tort claims under Revised Code Section 2744.03(A)(6). That section provides an employee with immunity from liability unless his acts were manifestly outside the scope of his employment; were with malicious purpose, in bad faith, or in a wanton or

6

reckless manner; or civil liability is expressly imposed on the employee by a section of the Revised Code. None of these exceptions apply. Draper was acting within the scope of his employment as a police officer when he stepped in to break up a potential disturbance of the peace between Renz and Lillo. No section of the Revised Code imposes liability on Draper for his actions.

Moreover, contrary to the bare-bones allegation found in the Complaint (¶ 43), Draper testified he did not act with any malicious purpose, in bad faith, or in a wanton or reckless manner, and the video evidence supports his testimony (Doc. No. 16-1, Affidavit of Jeremy Draper, ¶ 10; Video, beginning at approximately 43 minutes, 40 seconds). The video demonstrates that Draper's actions were patently reasonable, and this Court finds no issue of fact that his actions were guided by malicious intent, bad faith, or recklessness. *See Fabrey v. McDonald Village Police Dep't*, 70 Ohio St. 3d 351, 356 (1994) ("mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor"). Therefore, Draper too is entitled to immunity on all claims based on state law tort principles.

**Punitive Damages**

Plaintiffs included in their Complaint a prayer for punitive damages. In light of the above, Plaintiffs' prayer for punitive damages fails. Defendants' conduct was not actionable, let alone the type where punitive damages are appropriate.

## CONCLUSION

Therefore, this Court grants Defendants' Motion for Summary Judgment on all claims.

IT IS SO ORDERED.

              s/ *Jack Zouhary*
              JACK ZOUHARY
              U. S. DISTRICT JUDGE

              September 24, 2010